[Cite as *State v. Arnold*, 2021-Ohio-2836.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-200338<br>TRIAL NO. B-2001293 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| DARREL ARNOLD, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  August 18, 2021


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Alex Scott Havlin*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Law Office of Angela Glaser* and *Angela Glaser*, for Defendant-Appellant.

**MYERS, Judge.**

{¶1}     Defendant-appellant Darrell Arnold appeals the trial court's judgment finding him guilty of failing to register as a sexual offender in violation of R.C. 2950.04 and sentencing him to three years in prison.  In two assignments of error, Arnold challenges the trial court's imposition of a maximum sentence, arguing that it imposed a maximum sentence as a punishment for Arnold exercising his constitutional right to a jury trial and without considering the purposes of felony sentencing under R.C. 2929.12.  Finding his arguments to be without merit, we affirm the trial court's judgment.

### *Factual and Procedural Background*

{¶2}     Arnold was indicted for failing to register as a sexual offender in violation of R.C. 2950.04 and failing to provide notice of a change of address in violation of R.C. 2950.05.  Both offenses were felonies of the third degree, each carrying a maximum sentence of three years in prison.

{¶3}     At a pretrial hearing, the trial court noted on the record that the state had offered Arnold a plea bargain in which he would receive a sentence of two years in prison in exchange for pleading guilty to the offenses.  The court further noted that Arnold was entitled to nearly one year of jail-time credit, and it stated:

> So they are offering you two, which means you got to do one year but you're risking—not that I'm going to max you out, but I have to look at your record and everything and consider everything.  And when you go to trial, of course, a judge hears more than he does in a plea, a lot of times it comes out worse.

*   *   *

You only got one more to serve. If you take the deal, is what I'm saying. They offered you two—they are offering you two years. If you take the deal, you only got like about one more year to serve on that deal. If you get convicted and you get the max, six years, you got five more to serve. So you're risking five years. That's all I'm saying.

{¶4} Arnold responded that he would rather proceed to trial. His counsel told the trial court that he would like additional time to work with Arnold. The trial court encouraged Arnold to speak with his counsel, stating "Listen to your attorney, he's a really good attorney. I think he talked to you about a possible plea, you ought to listen to him about that. And then doing the math, do the math, I'm trying to help you out because I know you had some mental stuff, you know, I'm trying to help you. I am not a mean person, I am not trying to be vindictive." The trial court then informed Arnold that it would willingly grant a continuance if requested.

{¶5} After the parties recessed for lunch and Arnold had time to speak with his attorney, Arnold's counsel told the trial court that the state had offered, pending the trial court's approval, for Arnold to be sentenced to time served and placed on community control in exchange for a guilty plea to both offenses. The following discussion occurred regarding this offer from the state:

THE COURT: Would you plead and then I would put you on probation?

ARNOLD: How the hell am I going to take probation?

THE COURT: Huh?

ARNOLD: How the hell am I going to get probation? I can't even get housing.

\* \* \*

THE COURT: No, you would be on probation to me. We would work something out for you. You would not be violated for not having

housing.  They couldn't violate you for not having housing.  We would try to find some place for you to live.

*     *     *

THE COURT:  You don't have any place to live now?

ARNOLD:  I'm homeless.

THE COURT:  Okay.  Well, this sounds like a good option for you then. Plead to these, I'll put you on probation.

ARNOLD:  It's not for me, sir.  If you go to my past history, I have been on probation three or four times.  I make it up to three or four months, I just can't pay my fine off and they violate me.

THE COURT:  No, no, no, wait a minute.  With me you wouldn't have any fine, no costs or anything.  It would be cost remit, remit probation fees and remit attorney fees.  That's the way I do probation.

*     *     *

THE COURT:  Do you want to do that?

ARNOLD:  No.

THE COURT:  You don't want to plea[d]?

ARNOLD:  It ain't going to work out for me.

THE COURT:  Okay.  I think you're making a bad decision.  You could end up going to prison, whatever.  That's a really good deal for you.

ARNOLD:  I understand that, I appreciate that, but I been going through this for about 20-some years.

{¶6}  Arnold ultimately declined the offered plea and elected to be tried before a jury.  Prior to trial, the state dismissed the charge of failing to provide notice of a change of address.  Following the jury trial, Arnold was found guilty of failing to register in violation of R.C. 2950.04.

{¶7}  At sentencing, the state asked the trial court to impose the maximum sentence of three years, citing to Arnold's admitted disinterest in being placed on

4

community control and prior failed attempts at stabilizing Arnold in the community. When speaking on behalf of Arnold in mitigation, defense counsel discussed Arnold's struggles with homelessness and asked the court not to punish him for exercising his constitutional rights. The trial court told Arnold that it was not punishing him for going to trial, stating:

> He has a long record, there's a duty to protect the public and really discourage any further conduct by him. He just keeps doing it. He can't really be rehabilitated and basically, he basically told me the other day that he didn't want time served, he basically wants to be locked up because he has no place to go. He's—he continues to violate the registration laws, he just won't follow the law. So there's deterrence, protection of the public. I don't think he really can be rehabilitated.

{¶8} The court proceeded to impose a sentence of three years of imprisonment.

### *Vindictive Sentencing*

{¶9} In his first assignment of error, Arnold argues that the trial court erred when it imposed a maximum sentence, claiming it was a penalty for exercising his constitutional right to a jury trial.

{¶10} Pursuant to R.C. 2953.08(G)(2)(a), we may modify or vacate a defendant's sentence only if we clearly and convincingly find that the record does not support the trial court's findings under relevant statutes or that the sentence is contrary to law. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 22-23; *State v. White*, 2013-Ohio-4225, 997 N.E.2d 629, ¶ 5 (1st Dist.). A sentence is contrary to law where it is vindictively imposed upon a defendant as punishment for exercising her or his constitutional right to a jury trial. *State v. Rahab*, 150 Ohio St.3d 152, 2017-Ohio-1401, 80 N.E.3d 431, ¶ 8.

{¶11} In *Rahab*, the court considered whether a defendant was punished for exercising his constitutional right to a jury trial. Rahab turned down a plea bargain in which he would have been sentenced to three years in prison. Following a jury trial, the court sentenced him to six years in prison. *Id.* at ¶ 1. Rahab argued on appeal that the trial court imposed a harsher sentence as a punishment for exercising his constitutional right to a jury trial. In support of his argument, he cited the following statement made by the trial court prior to trial:

> Sir, you understand that the State is offering to do an agreed sentence of three years in prison. The charge that you're facing now, sir, carries a potential sentence of 2 to 8. There's the presumption that you go to prison, okay? And if you didn't take the agreed sentence and you were found guilty, it would be up to the Court to sentence you. And the Court does not look highly on cases where people don't take responsibility and accept that they did something wrong if they're found guilty. You understand that? Meaning it probably would be more. I'm not going to fool you. You understand?

*Id.* at ¶ 20. Rahab additionally relied on the trial court's statement at sentencing that "You went to trial. You gambled, you lost. You had no defense. And you even admit that you did it, and yet you put this woman through this trial again. You traumatized her by breaking into her house. And then you had to traumatize her again to relive it and go to trial. I don't get it." *Id.* at ¶ 23. On appeal, this court rejected Rahab's argument that the trial court increased his sentence as a punishment for going to trial, finding that the trial court based the sentence imposed on the facts of the case and Rahab's criminal history, rather than his decision to go to trial. *Id.* at ¶ 2.

{¶12} The Supreme Court of Ohio accepted Rahab's appeal. It examined Rahab's claim that the trial court imposed an impermissible "trial tax"; in other words, whether the judge increased his sentence in retaliation for the exercise of his

constitutional right to a jury trial. The issue was whether the trial court acted vindictively.

{¶13} The court recognized that "vindictiveness on the part of a sentencing judge has been presumed in only a narrow class of cases," and it declined to apply a presumption of vindictiveness whenever a court imposes a harsher sentence following trial than had been offered in plea negotiations. *Rahab*, 150 Ohio St.3d 152, 2017-Ohio-1401, 80 N.E.3d 431, at ¶ 9 and 16. The court found that a presumption of vindictiveness was not warranted because, among other things, after a trial a court has more information upon which to base a sentence than does a court imposing a sentence reached during plea negotiations. *Id.* at ¶ 16. It further found that a defendant who accepts a plea bargain may receive a less harsh sentence because the defendant has accepted responsibility and because, in return for the various benefits that the state receives from a plea bargain, such as foregoing the risk that the defendant will be found not guilty at trial and avoiding the burden of trying the case, the defendant is offered certain sentencing considerations, such as receiving a more lenient sentence. *Id.* at ¶ 17.

{¶14} The court held that where a defendant claims that the trial court imposed a harsher sentence following a trial after the defendant's rejection of a plea offer, the defendant must prove actual vindictiveness on the part of the trial court. *Id.* at ¶ 18. A defendant's assertion of actual vindictiveness should be reviewed with the presumption that the trial court considered the appropriate sentencing criteria. *Id.* at ¶ 19. A reviewing court then examines the record, including the trial court's statements, the evidence presented at trial, and the information presented during the sentencing hearing, to determine whether the trial court acted with actual vindictiveness. *Id.* "An appellate court may reverse a sentence for vindictiveness only if, after review of the entire record, it finds clearly and convincingly that the sentence was based on actual vindictiveness." *Id.* at ¶ 33.

{¶15} The *Rahab* court held that the record did not clearly and convincingly show that the sentence imposed on Rahab was the result of actual vindictiveness. *Id.* at ¶ 21. It noted that the trial court's pretrial comments were not a threat to impose more prison time on Rahab if he exercised his right to a jury trial, but rather were made to ensure that Rahab understood the choice he was making. *Id.* The court found the comments made by the trial court at sentencing more troubling, as they gave the appearance that the court was chiding Rahab for going to trial. *Id.* at ¶ 27. But it explained that the statements could not be read in isolation, and "when read in the context of the sentencing hearing, it seems likely that the court was not taking Rahab to task for going to trial but rather for acting contrite and admitting his crime only after he had been found guilty." *Id.* at ¶ 28.

{¶16} Following our review of the record, we do not find that the trial court acted with actual vindictiveness when sentencing Arnold. When the plea bargain was disclosed to the trial court, the court engaged Arnold in a discussion of what that plea offer meant. It clearly explained to Arnold the potential maximum sentence he faced, as compared to the sentence he would receive in the offered plea bargain. As in *Rahab*, the court's statements allowed Arnold to "intelligently evaluate whether he wanted to risk the possibility of a greater sentence." *See id.* at ¶ 21. The court expressed its opinion that the offered plea was fair and that Arnold should accept the plea, but it did not pressure Arnold to accept the plea or threaten a harsher sentence if Arnold were to reject it. And the court made clear that it was willing to give Arnold additional time to speak with his counsel as well as grant Arnold a continuance.

{¶17} The trial court's statements at sentencing further support a determination that it did not act with actual vindictiveness. Prior to imposing sentence, the court acknowledged Arnold's lengthy criminal history, which included 16 felony convictions and five convictions for registration-law violations. It further acknowledged that Arnold wanted to ensure that he received credit for time served and did not want to be placed on community control, leaving the court with little

option except to impose a prison term. And after defense counsel expressed concern that the court would potentially punish Arnold for exercising his constitutional right to a jury trial, the court stated that "I am not punishing him for going to trial, just with his long record, you know."

{¶18} Because the record does not clearly and convincingly support a finding that the trial court acted with actual vindictiveness when imposing a sentence that was harsher than the sentence offered during plea negotiations, we overrule the first assignment of error.

### *Purposes of Sentencing*

{¶19} In his second assignment of error, Arnold argues that the trial court erred in imposing a maximum sentence without considering the purposes of felony sentencing under R.C. 2929.12.

{¶20} R.C. 2929.12 is not a fact-finding statute, and absent an affirmative demonstration by Arnold to the contrary, we will presume that the trial court considered the factors set forth in this statute. *State v. Anderson*, 1st Dist. Hamilton No. C-190588, 2021-Ohio-293, ¶ 8. Prior to imposing sentence, the trial court considered Arnold's criminal history and prior violations of the registration laws, as well as referenced the need to protect the public and impose a sentence that would serve as a deterrent to Arnold's commission of crime in the future. And following the decision of the Supreme Court of Ohio in *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 42, this court is not permitted "to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12."

{¶21} Because Arnold has failed to demonstrate that the trial court failed to consider R.C. 2929.12 prior to imposing sentence, we overrule the second assignment of error. The judgment of the trial court is accordingly affirmed.

Judgment affirmed.


**ZAYAS, P.J.,** and **WINKLER, J.,** concur.



Please note:

The court has recorded its own entry on the date of the release of this opinion.